IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-10367
_____

WORDPERFECT CORPORATION,

Plaintiff-Appellee,

versus

FINANCIAL SERVICES MARKETING
CORPORATION,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas
(3:90-CV-2727-T)
_____
April 15, 1996
Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Financial Services Marketing Corporation ("FSMC") challenges the district court's grant of a permanent injunction that prohibits FSMC from using the trademark "TAXPERFECT." We do not address the merits of FSMC's case at this time. Instead, we hold that the district court erroneously excluded relevant evidence at trial, which resulted in a rendering of incomplete factual findings and legal conclusions. We therefore vacate both the order of final judgment and the district court's order to the Commissioner of

_____

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Patents and Trademarks. We remand to give the district court another opportunity, in the light of this opinion, to make additional factual findings and legal conclusions that will enable us to review the propriety of the district court's permanent injunction.

I

In the light of our remand for further findings of fact, we refrain from presenting here a detailed factual background of this dispute. Instead, we turn directly to a discussion of the alleged evidentiary errors that were brought to our attention on appeal. We address two categories of excluded evidence: (1) the testimony of FSMC's witness, Gregory Fischer; and (2) two settlement agreements, each of which was entered into between the plaintiff/appellee, WordPerfect Corporation ("WPCorp"), and a nonparty to this litigation.

Absent a showing by the party asserting error that substantial rights of that party have been adversely affected, reversal for an erroneous evidentiary ruling is not warranted. E.g., Crumpton v. Confederation Life Ins. Co., 672 F.2d 1248, 1253 (5th Cir. 1982). For the reasons explained below, FSMC has met this burden with respect to the district court's exclusion of Gregory Fischer's testimony but has failed to do so with respect to the excluded settlement agreements.

-2-

During the bench trial of this matter, FSMC called Gregory Fischer, the president of a New York-based software company named Micro Perfect Corporation, to testify in three primary areas: Micro Perfect's longstanding use of numerous trademarks in the form of "Xxxx Perfect"; Micro Perfect's assignment of its rights, if any, in the mark "TAXPERFECT" to FSMC; and Micro Perfect's settlement of a trademark infringement suit with WPCorp regarding each company's use of trademarks in the form of "Xxxx Perfect." The bulk of Fischer's testimony on direct examination addressed his development and marketing of more than sixty different software programs under various formulations of the name "Xxxx Perfect." According to Fischer, the vast majority of his products were designed as "add-ons" to a general purpose accounting software program. Each add-on program targeted a specific "vertical market" such as video sales, cattle management and hotel management. Nonetheless, Fischer testified that he had developed at least one general purpose software program for retailers, which he marketed as "POS Perfect."

On direct examination, Fischer also testified about a handwritten assignment agreement between Micro Perfect, as assignor, and FSMC as assignee. This document, executed by Fischer on June 1, 1993, purported to assign to FSMC any property rights and goodwill in the name "TAXPERFECT" that Micro Perfect might have acquired. Once authenticated by Fischer, this assignment agreement

(the "TAXPERFECT Assignment") was entered into evidence without objection.

FSMC attempted to question Fischer about a later settlement agreement dated as of April 26, 1994 (the "MPC Settlement Agreement"), which WPCorp and Micro Perfect had entered into in resolution of a trademark infringement lawsuit. Having denied a pretrial motion to introduce the agreement into evidence, the district court permitted FSMC to add the MPC Settlement Agreement to its bill of exception on appeal but refused to admit the document into evidence or to hear testimony regarding any aspect of its contents.

The demise of Fischer's testimony came on cross-examination, when counsel to WPCorp questioned Fischer about an anonymous telefax that was sent to a major New York financial institution allegedly for the purpose of maligning WPCorp. Fischer refused to testify about the document. Claiming lack of relevance, counsel for FSMC objected to the line of questioning. Counsel to WPCorp countered by arguing that the telefax showed Fischer's "bias which goes to his credibility as a witness." The court then entered the fray and gave Fischer the opportunity to contact his lawyer.[1] When

---

[1]In relevant part, the district court's exchange with Fischer follows:

> THE COURT: ... if the witness refuses to answer, then he will be at miss [sic] own merit [sic]. I'm not asking him anything else, other than admit or deny sending the document.
> ...

the cross-examination resumed, Fischer declined to testify about the telefax and claimed his Fifth Amendment privilege against self-incrimination.  The district court immediately struck, sua sponte, Fischer's entire direct and cross-examination testimony.[2]

In striking Fischer's entire testimony without considering the substance of his direct testimony in the light of Fischer's assertion of his Fifth Amendment rights, the district court abused its discretion and caused substantial prejudice to FSMC's defense. In this circuit, all or part of a witness's direct testimony may be subject to a motion to strike, if the Fifth Amendment privilege against self-incrimination is invoked by that witness during cross-

---

FISCHER:  Without advice of counsel, or without being able to consult counsel, I will not answer any questions on this document.

THE COURT:  Sir, I think you'd better between now and 9:00 o'clock tomorrow morning talk with your lawyer, because -- I'm just going to give you the opportunity to talk to your lawyer.  And if you fail to answer the question after that, you will have to suffer the consequences.

[2]The district court's ruling follows:

THE COURT:  If you're claiming your privilege that's fine.  I'm going to strike your testimony in toto.  You are excused.
...

FSMC COUNSEL:  So his whole testimony has been stricken, Your Honor.

THE COURT:  That's correct.  The witness refused to be examined on cross-examination, then his testimony is stricken.  The witness is -- the witness may step down.

examination.  <u>Fountain v. United States</u>, 384 F.2d 624, 628 (5th Cir. 1967).  Before striking any testimony, however, the trial court must examine the content of the direct testimony and determine whether the cross-examining party has been deprived of its right to test the truth of the direct testimony.  <u>Id.</u>  Our precedent instructs that "<u>so much of</u> the direct testimony as cannot be subjected to sufficient inquiry must be struck."  <u>Id.</u> (emphasis added).

In this case, the trial court failed to examine Fischer's direct testimony and failed to consider whether Fischer's invocation of the Fifth Amendment hampered WPCorp's ability to test the truth of the direct testimony.  A detailed review of the trial transcript clearly shows that Fischer's invocation of the privilege did not deprive WPCorp's right to test the truth of his direct testimony.  WPCorp indicated at trial that its objective in examining Fischer about the telefax was to undermine Fischer's credibility.  However, prior to questioning Fischer about the telefax, WPCorp had already challenged Fischer's credibility many times during its cross-examination of the witness.  Such cumulative inquiries into the credibility of a witness are "collateral" matters that do not merit wiping the slate clean of direct testimony.  <u>United States v. Diecidue</u>, 603 F.2d 535, 552 (5th Cir. 1967).  We therefore reverse, and, on remand, the district court must consider Fischer's direct and cross-examination testimony, including the TAXPERFECT Assignment between Micro Perfect and FSMC.

Further, the district court must formulate, as necessary, supplemental factual findings and legal conclusions, or modify existing ones, which take into consideration the previously stricken testimony. We express no opinion whatsoever as to Fischer's credibility, which determination we leave, of course, to the sound discretion of the district court.

III

FSMC further argues that the district court committed reversible error by excluding from evidence two separate settlement agreements, namely: (1) an agreement dated as of September 6, 1985, between LJK Enterprises, Inc. ("LJK") and WPCorp's predecessor, Satellite Software International ("SSI"); and (2) the MPC Settlement Agreement (referenced in Part A above).

WPCorp argues that the district court properly sustained its objection to the introduction of these settlement agreements under Federal Rule of Evidence 408[3], and, alternatively, under Federal

---

[3]Rule 408 provides:

### Compromise and Offers to Compromise

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require

Rule of Evidence 402.[4]  Finding no reversible error, we uphold the district court's decision to exclude these agreements.

Under Rule 408, a defendant cannot prove the invalidity or amount of a plaintiff's claim by proof of a plaintiff's settlement with a third person.  McHann v. Firestone Tire & Rubber Co., 713 F.2d 161, 166 (5th Cir. 1983) (quoting 2 D. Louisell & C. Mueller, Federal Evidence § 171, at 290 (1978 & Supp. 1983).  Although inadmissible to show liability, Rule 408 does not require the exclusion of a settlement agreement that is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving the obstruction of a criminal investigation or prosecution.  FED. R. EVID. 408; see also, e.g., Kennon v. Slipstreamer, Inc., 794 F.2d 1067, 1069 (5th Cir. 1986); C. McCormick, McCormick on Evidence § 266, at 197 (4th ed. 1992).  The district court has discretion to admit evidence of

exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

[4]Rule 402 provides:

**Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible**

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.  Evidence which is not relevant is not admissible.

a settlement for other purposes.  <u>Kennon</u>, 794 F.2d at 1069-70; <u>Belton v. Fibreboard Corp.</u>, 724 F.2d 500, 505 (5th Cir. 1984).  The district court's decision will not be reversed in the absence of an abuse of discretion amounting to manifest error.  <u>Belton</u>, 724 F.2d at 505.

## A

It appears from the district court's findings of fact and conclusions of law that it excluded the LJK Agreement and evidence of that settlement primarily for a lack of relevance under Rule 402.  The district court found as a fact that LJK had opposed WPCorp's application to register the WordPerfect trademark and that LJK's opposition was settled by mutual agreement.  The district court further found that the positions of LJK and WPCorp in the settlement had "little relevance to the computer industry over a decade later because of changed circumstances, including the increased market visibility of WordPerfect."

We do not find reversible error in the district court's decision to exclude the LJK Agreement on relevance grounds.  We note that whatever relevance this settlement agreement might have once had, its significance was effectively mooted when WPCorp later purchased from LJK all rights to significant LJK marks in the form of "Xxxx Perfect."  In the light of these subsequent events, the document has no plausible relevance to FSMC's current defense.

## B

In contrast, the district court excluded the MPC Settlement Agreement clearly under Rule 408. The court explained its reasoning in an order that denied FSMC's motion in limine to introduce the document into evidence. On appeal, FSMC seeks to persuade us that this ruling was erroneous because FSMC did not offer the MPC Settlement Agreement to prove WPCorp's liability in this lawsuit. Instead, FSMC argues that it offered the agreement to show: "(1) WPCorp's consent to third-party use of numerous XXXX-Perfect marks, (2) FSMC's interest in the "TAXPERFECT" mark, (3) widespread third-party usage of the XXXX-Perfect naming convention, (4) the lack of exclusivity of WPCorp's use of the XXXX-Perfect marks in the computer software industry, and (5) a basis to estop WPCorp from thereafter continuing to contest FSMC's use of the "TAXPERFECT" mark."

We find none of these reasons persuasive. It strikes us that most of the reasons now offered by FSMC are nothing more than thinly-veiled attempts to prove WPCorp's liability, particularly on the fundamental issue of the "likelihood of confusion" under federal trademark law. Moreover, the record shows that FSMC initially argued in its motion in limine that the MPC Settlement Agreement "defeats Wordperfect's alleged claims against FSMC and exposes them as meritless." FSMC further argued in the same motion that the MPC Settlement Agreement had a direct impact on the "likelihood of confusion" analysis under controlling Fifth Circuit precedent.

As to the claim that the MPC Settlement Agreement proves FSMC's interest in the "TAXPERFECT" mark, this reason fails as well. FSMC's interest in the "TAXPERFECT" mark is expressly defined in the TAXPERFECT Assignment between FSMC and Micro Perfect, which predates the MPC Settlement Agreement by almost a year. At that time, Micro Perfect assigned its rights, if any, in the "TAXPERFECT" mark to FSMC. The subsequent MPC Settlement Agreement between Micro Perfect and WPCorp neither mentions nor describes the mark "TAXPERFECT." This silence is understandable because Micro Perfect, by virtue of its earlier assignment to FSMC, no longer possessed any rights to "TAXPERFECT" and had no viable interest in the mark. We conclude that FSMC misconstrues the plain language of the MCP Settlement Agreement when it now argues that, because WPCorp agreed not to market <u>accounting</u> software under a name in the form of XXXX-Perfect, WPCorp consented in the settlement agreement to Micro Perfect's use of the trademark "TAXPERFECT."[5] Consistent with our interpretation is the fact that

---

[5]According to FSMC, the terms of the MPC Settlement Agreement that expressly grant use of the mark TAXPERFECT to Micro Perfect and other third parties are, in pertinent part:

> 2. WordPerfect agrees that MPC may continue to use trademarks of the form XXXX-PERFECT in connection with computer software so long as the software involves accounting functions... .
>
> 3. WordPerfect agrees not to market products whose names are of the form XXXX-PERFECT, except for WORDPERFECT-XXXX, in connection with software involving accounting functions ... .

nothing in the record indicates that Micro Perfect thereafter assigned any of its newly-acquired rights under the MPC Settlement Agreement to FSMC. Having failed to prove that it was Micro Perfect's intended assignee under the MPC Settlement Agreement, FSMC has no rational basis for arguing that it derived greater rights to the mark "TAXPERFECT" under a settlement agreement to which it was not a party.[6]

Finally, with respect to FSMC's estoppel argument, FSMC cites to no controlling precedent that supports a theory of estoppel in similar circumstances. We find this reason meritless.[7]

Our precedent strongly endorses the underlying purpose of Rule 408, which is to encourage voluntary settlements as a means for obviating costly and time-consuming litigation. E.g., Kennon, 794

---

[6]This is not to say that, in an appropriate case, we would not consider admitting into evidence a settlement agreement as an exception to Rule 408 for the purpose of proving a property interest or demonstrating ownership.

[7]In dictum we note that, even if the MPC Settlement Agreement were improperly excluded, the exclusion could hardly amount to reversible error in the light of our disposition of the Fischer testimony issue and our instructions to the district court on remand. See Branch v. Fidelity & Cas. Co. of New York, 783 F.2d 1289, 1294 (5th Cir. 1986) (admitting settlement agreement violated Rule 408 and would have been reversible error but for appellate court's disposition of the indemnity issue). Much of Fischer's testimony serves the same purposes that FSMC attempted to accomplish by introducing the MPC Settlement Agreement. In fact, Fischer used the MPC Settlement Agreement to refresh his memory in responding to FSMC's questions on direct examination. Moreover, in its consideration of Fischer's testimony on remand, the district court will reconsider the exact liability issues (including the "likelihood of confusion") that FSMC sought to prove by introducing the MPC Settlement Agreement into evidence.

F.2d at 1069. In line with our precedent and in reaffirming this sound purpose, we hold that the district court did not abuse its discretion by excluding the MPC Settlement Agreement from evidence.

CONCLUSION

In ruling on the evidentiary matters discussed above, we emphasize, in conclusion, that we do not express any opinion regarding the merits of FSMC's remaining claims. We cannot do so until we are presented with a complete picture of the relevant facts and a sounder basis for the district court's conclusions of law. We simply hold, for the present, that further consideration by the district court is necessary (including supplemental factual findings and legal conclusions) before we can review the propriety of the district court's permanent injunction against FSMC.

In its reconsideration, we think that the district court should address the four factors under Union Nat'l Bank of Texas, Laredo, Texas v. Union Nat'l Bank of Texas, Austin, Texas, 909 F.2d 839, 844 (5th Cir. 1990), which, as the district court correctly concluded, WPCorp must prove before an injunction for trademark infringement can be issued. On this record, we are unable to detect clear factual findings that support each of the Union National Bank factors. By way of example, there is no specific finding that WPCorp is the senior user of the name or mark at issue in this case. Also, in the light of our reinstatement of the Fischer testimony, the district court must give further

-13-

consideration to the <u>Union National Bank</u> factors that concern the "likelihood of confusion" issue. Accordingly, the evidentiary ruling indicated above is REVERSED, the district court's order to the Commissioner of Patents and Trademarks and the final judgment are VACATED, and the case is REMANDED for specific findings of fact and conclusions of law consistent with this opinion.

REVERSED in part, VACATED and REMANDED.